**In re R.G.**

**Appeal of R.G.**

Superior Court of Pennsylvania.

Argued Aug. 25, 2010.
Filed Dec. 10, 2010.

Theodore Q. Thompson, Blue Bell, for appellant.

Peter Hobart, Assistant District Attorney, West Chester, for Commonwealth, participating party.

BEFORE: MUSMANNO, PANELLA and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

Appellant, R.G., appeals from the order denying his request to have 50 P.S. §§ 7301(b)(1) and 7304 of the Mental Health Procedures Act ("MHPA"), 50 P.S.

§ 7101 *et seq.*, declared unconstitutional. For the reasons that follow, we affirm.

Appellant killed his wife and unborn child, stabbed his grandmother with a butcher knife, and gouged out the eye of his five year-old daughter in 1978. After a bench trial in 1980, he was found not criminally responsible for the crimes charged (murder and attempted murder). On June 18, 1981, he was involuntarily committed to Norristown State Hospital for one year pursuant to Section 7304 of the MHPA. Appellant has been recommitted each subsequent year. On October 8, 2009, Appellant filed a petition seeking to have Sections 7301(b)(1) and 7304 of the MHPA declared unconstitutional. The trial court denied the petition and the motion for reconsideration. This appeal followed.

Appellant raises the following issues on appeal:

1. The trial court erred by failing to find that certain provisions of the Mental Health Procedures Act (MHPA), namely 50 P.S. §§ 7301(b)(1) and 7304, as applied to Appellant, were unconstitutional?

2. That the trial court erred by failing to discharge Appellant from Norristown State Hospital?

Appellant's Brief at 3.[1]

"As a facial challenge to the constitutionality of a statute raises a question of law, our standard of review is *de novo*, and our scope of review is plenary." *In the Interest of F.C. III*, 2 A.3d 1201, 1213 n. 8 (2010).

The portions of the MHPA that Appellant challenges provide, in relevant part, as follows:

§ 7301. Persons who may be subject to involuntary emergency examination and treatment

(b) DETERMINATION OF CLEAR AND PRESENT DANGER.—(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. **If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict. In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated.** For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

§ 7304. Court-ordered involuntary treatment not to exceed ninety days

1. Appellant's second issue raises a sufficiency argument as to his recommitment. We observe that this issue was not included in his petition to the trial court challenging constitutionality. We also note that Appellant has previously challenged the evidentiary sufficiency of his commitment in appeals to this Court wherein we most recently concluded that his sufficiency argument was "refuted by the record." *See In re: Richard Greist*, No. 1244 EDA 2008, at 7, 968 A.2d 801 (filed January 6, 2009). Accordingly, the sufficiency issue will not be addressed herein.

(a) PERSONS FOR WHOM APPLICATION MAY BE MADE.—(1) A person who is severely mentally disabled and in need of treatment, as defined in section 301(a), may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger under section 301(b)(1) (serious bodily harm to others), or section 301(b)(2)(i) (inability to care for himself, creating a danger of death or serious harm to himself), or 301(b)(2)(ii) (attempted suicide), or 301(b)(2)(iii) (self-mutilation).

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 in fact occurred, and that his condition continues to evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days.

(b) PROCEDURES FOR INITIATING COURT–ORDERED INVOLUNTARY TREATMENT FOR PERSONS ALREADY SUBJECT TO INVOLUNTARY TREATMENT.—(1) Petition for court-ordered involuntary treatment for persons already subject to treatment under sections 303, 304 and 305 may be made by the county administrator or the director of the facility to the court of common pleas.

(2) The petition shall be in writing upon a form adopted by the department and shall include a statement of the facts constituting reasonable grounds to believe that the person is severely mentally disabled and in need of treatment. The petition shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person. It shall also state that the person has been given the information required by subsection (b)(3).

(3) Upon the filing of the petition the county administrator shall serve a copy on the person, his attorney, and those designated to be kept informed, as provided in section 302(c), including an explanation of the nature of the proceedings, the person's right to an attorney and the services of an expert in the field of mental health, as provided by subsection (d).

(4) A hearing on the petition shall be held in all cases, not more than five days after the filing of the petition.

(5) Treatment shall be permitted to be maintained pending the determination of the petition.

\*       \*       \*

(f) DETERMINATION AND ORDER.—Upon a finding by clear and convincing evidence that the person is severely mentally disabled and in need of treatment and subject to subsection (a), an order shall be entered directing treatment of the person in an approved facility as an inpatient or an outpatient, or a combination of such treatment as the director of the facility shall from time to time determine. Inpatient treatment shall be deemed appropriate only after full consideration has been given to less restrictive alternatives. Investigation of treatment alternatives shall include consideration of the person's relationship to his community and family, his employment possibilities, all available community resources, and guardianship services. An order for inpatient treatment shall include findings on this issue.

(g) DURATION OF COURT–ORDERED INVOLUNTARY TREATMENT.—(1) A person may be made subject to court-ordered involuntary

treatment under this section for a period not to exceed 90 days, excepting only that: Persons may be made subject to court-ordered involuntary treatment under this section for a period not to exceed one year if the person meets the criteria established by clause (2).

(2) A person may be subject to court-ordered involuntary treatment for a period not to exceed one year if:

(i) severe mental disability is based on acts giving rise to the following charges under the Pennsylvania Crimes Code: murder (§ 2502); voluntary manslaughter (§ 2503); aggravated assault (§ 2702); kidnapping (§ 2901); rape (§ 3121(1) and (2)); involuntary deviate sexual intercourse (§ 3123(1) and (2)); arson (§ 3301); and

(ii) a finding of incompetency to be tried or a verdict of acquittal because of lack of criminal responsibility has been entered.

(3) If at any time the director of a facility concludes that the person is not severely mentally disabled or in need of treatment pursuant to subsection (a), he shall discharge the person provided that no person subjected to involuntary treatment pursuant to clause (2) may be discharged without a hearing conducted pursuant to clause (4).

(4) In cases involving involuntary treatment pursuant to clause (2), whenever the period of court-ordered involuntary treatment is about to expire and neither the director nor the county administrator intends to apply for an additional period of court-ordered involuntary treatment pursuant to section 305 or at any time the director concludes that the person is not severely mentally disabled or in need of treatment, the director shall petition the court which ordered the involuntary treatment for the unconditional or conditional release of the person. Notice of such petition shall be given to the person, the county administrator and the district attorney. Within 15 days after the petition has been filed, the court shall hold a hearing to determine if the person is severely mentally disabled and in need of treatment. Petitions which must be filed simply because the period of involuntary treatment will expire shall be filed at least ten days prior to the expiration of the court-ordered period of involuntary treatment. If the court determines after hearing that the person is severely mentally disabled and in need of treatment, it may order additional involuntary treatment not to exceed one year; if the court does not so determine, it shall order the discharge of the person.

50 P.S. §§ 7301(b)(1) and 7304 (emphasis added).[2]

Appellant asserts that he was initially confined due to his history of mental illness but his current mental status warrants no further commitment because the mental illness is not continuing. Appellant contends *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) requires that he be both severely mentally ill and a clear and present danger for recommitment to be continued. Appellant relies on the United States Supreme Court's observation that Foucha could not be retained in a mental institution "absent a determination in civil commitment proceedings of current mental illness and dangerousness." *Id.* at 78, 112 S.Ct. 1780. Appellant reasons from this determination in *Foucha* that civil commitment must be

---

**2.** Appellant broadly states his assertion as to the unconstitutionality of Section 7304 but appears to focus on sections (a) and (b).

deemed a denial of due process if used for an insanity acquittee who is either no longer currently mentally ill or no longer dangerous.

We have summarized the United States Supreme Court's holding in *Foucha* as follows:

> In *Foucha*, a criminal defendant in Louisiana was acquitted by reason of insanity. The defendant was placed in a mental hospital, where he regained his sanity. Louisiana law allowed the defendant to remain confined in the mental hospital unless he proved that he was no longer dangerous. The United States Supreme Court struck down that law on due process and equal protection grounds. The Court reasoned that the state presented no convincing basis for depriving a sane but potentially dangerous individual of his fundamental liberty interest without fundamental due process protections, such as proof of continued insanity and dangerousness by clear and convincing evidence.

*In Re: K.A.P.*, 916 A.2d 1152, 1163 (Pa.Super.2007) (citations omitted). *Foucha*, thus, addressed a state statutory commitment scheme that required no showing of continued mental illness. The narrow holding of the Court, as stated by Justice O'Connor in a concurring opinion, provides as much:

Louisiana asserts that it may indefinitely confine Terry Foucha in a mental facility because, although not mentally ill, he might be dangerous to himself or to others if released. For the reasons given in Part II of the Court's opinion, this contention should be rejected. I write separately, however, to emphasize that the Court's opinion addresses only the specific statutory scheme before us, which broadly permits indefinite confinement of sane insanity acquittees in psychiatric facilities. This case does not require us to pass judgment on more narrowly drawn laws that provide for detention of insanity acquittees, or on statutes that provide for punishment of persons who commit crimes while mentally ill.

*Foucha*, 504 U.S. at 86–88, 112 S.Ct. 1780 (emphasis added).[3]

Again, the holding in *Foucha* provides that one acquitted of a crime by virtue of legal insanity may not be committed absent a showing of mental illness and dangerousness, and is clearly limited to situations in which a state commitment statute requires no showing of continued mental illness. The statute in question, the MHPA, includes these requisite elements and, therefore, cannot be deemed unconstitutional in contravention of *Foucha*.[4]

**3.** A review of the opinion in *Foucha* reflects that it is a plurality because only four Justices agreed with the majority. Justice O'Connor's concurring opinion represents the narrower holding of the Court. *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 947 F.2d 682, 693 (3rd Cir.1991) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.").

**4.** *See also State v. Huss*, 666 N.W.2d 152 (Iowa 2003) (wherein Iowa Supreme Court disagreed with assertion that, because Huss displayed no symptoms of mental illness, further commitment would "condemn a person who was formerly mentally ill to a lifetime in prison" in contravention of the holding in *Foucha*; the court concluded that although the Supreme Court in *Foucha* struck down a statutory scheme that permitted Louisiana to confine those found not guilty by reason of insanity without any proof of continuing mental illness, the governing Iowa rule requires a finding of both mental illness and dangerousness and thus does not suffer the Louisiana statute's constitutional flaws.) We recognize, however, that while persuasive, the decisions

Section 301(a) of the MHPA, 50 P.S. § 7301(a), defines persons subject to involuntary emergency examination and treatment as follows:

> (a) **Persons Subject.**—whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment. **A person is severely mentally disabled when, as a result of mental illness, his** capacity to exercise self-control, judgment and discretion in the conduct of is affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 P.S. § 7301(a) (emphasis added). Section 7304(a)(1), which addresses court-ordered involuntary treatment, incorporates this definition when it provides that "[a] person who is severely mentally disabled and in need of treatment, **as defined in section 301(a),** may be made subject to court-ordered involuntary treatment upon a determination of clear and present danger." 50 P.S. § 7304(a)(1) (emphasis added). Section 7305(a) of the MHPA provides for recommitment after a review hearing is held to reassess the requirements of 7304(a)(1).[5] The review hearings for involuntary recommitment are held on a yearly basis. 50 P.S. § 7304(g). Thus, by the clear dictates of the MHPA, in order for an individual to be involuntarily recommitted, a finding of mental disability is required at every annual recommitment hearing.

In addition, the petitioner must also show by clear and convincing evidence that the individual continues to pose a "clear and present danger" of harm to himself or others. 50 P.S. § 7304(a), (f). "Clear and present danger" may be demonstrated by establishing that: (1) the conduct that led to the criminal proceedings occurred, and (2) that there is a reasonable probability that such conduct will be repeated. *Commonwealth v. Helms,* 352 Pa.Super. 65, 506 A.2d 1384, 1388 (1986) (citing 50 P.S. § 7304(a), (f)). "[A] petitioner need not prove that an insanity acquittee who had been charged with criminal homicide will actually kill again. It is sufficient to show a reasonable probability that some form of violent conduct will occur." *Id.* Further, "[t]he prior conduct of

---

of other states are not binding on Pennsylvania courts. *Willard v. Interpool, Ltd.,* 758 A.2d 684, 686 (Pa.Super.2000) (citing *Appeal of Penn–Lehigh Corp.,* 191 Pa.Super. 649, 159 A.2d 56, 59 (1960)).

5. Section 7305(a) specifically provides:
§ 7305. Additional periods of court-ordered involuntary treatment
(a) At the expiration of a period of court-ordered involuntary treatment under section 304(g) or this section, the court may order **treatment for an additional period** upon the application of the county administrator or the director of the facility in which the person is receiving treatment. Such order **shall be entered upon hearing on findings as required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment.** The additional period of involuntary treatment shall not exceed 180 days; provided that persons meeting the criteria of section 304(g)(2) may be subject to an additional period of up to one year of involuntary treatment. A person found dangerous to himself under section 301(b)(2)(i), (ii) or (iii) shall be subject to an additional period of involuntary full-time inpatient treatment only if he has first been released to a less restrictive alternative. This limitation shall not apply where, upon application made by the county administrator or facility director, it is determined by a judge or mental health review officer that such release would not be in the person's best interest.

50 P.S. § 7305(a) (emphasis added).

one who is mentally ill may be an indicator of future behavior. Appellant's involvement in such an extreme form of violence, while not dispositive, is one factor the hearing judge may consider in his evaluation of the appellant's continued dangerousness." *Id.* at 1389–1390.

Thus, the MHPA provides for adequate protection against outdated determinations and comports with the due process requirements of *Foucha.* Civil commitment and recommitment under the MHPA require both of the elements discussed in *Foucha,* a current mental disability and a determination of dangerousness. Accordingly, the MHPA is consistent with the dictates of *Foucha,* and Appellant's constitutionality challenge fails.[6]

Order affirmed.

---

**6.** Similarly, *see In Re: K.A.P., supra,* (concluding no merit to Appellant's claim that Juvenile Act violates due process by keeping juvenile sex offenders in indefinite civil commitment based on vague or weak predictions of future dangerousness; because of appropriate safeguards concerning commitment, Court determined that the Juvenile Act does not contravene the holding in *Foucha* ).